The complainant files its bill to foreclose two certain mortgages upon a tract of land in Ocean City, Cape May county, *Page 172 
title to which is in the two defendants, Naomi M. Sutton and Charlotte S. Chester.
These two defendant are the respective wives of the defendants, Edward M. Sutton and Ralph L. Chester. The defendants are the agents of the wives and transact all business in connection with the property in question.
In each of the mortgages there was contained a provision "that if default should be made in the payment of interest therein provided for the space of thirty days after any semi-annual payment should fall due, at the option of complainant, the whole principal debt secured thereby should become immediately due and payable, and also a provision that there should be produced to complainant, on or before the 31st day of December of each and every year, receipts for all taxes of the current year assessed upon the premises described in said mortgage, and, if default should be made in such production, then, at the option of the complainant, the whole principal debt should become immediately due and payable." In the second mortgage there was a provision that if at any time default should be made in the payments of any installments (of principal) as therein set forth for the space of thirty days after the same should fall due, then, at the option of the mortgagee, the whole principal debt secured thereby should become immediately due and payable.
On January 2d 1925, interest on the first of said mortgages to the amount of $2,100, interest on the second mortgage to the amount of $315, and an installment of $1,500 on the said second mortgage, aggregating in the total $3,915, became due and payable. The bill alleges that the sum of $1,957.50, one-half of the total of said items, was paid and credited, and that there remained unpaid the remaining amount of $1,957.50, and that the same remained unpaid for more than thirty days, and still remains unpaid.
That "default has likewise been made in tax receipts for the year 1924, upon said premises, said receipts not having yet [at the time of the filing of the bill, March 5th, 1925] been produced to the complainant." *Page 173 
It is proven that the "second half of the tax was not paid until the 18th day of March, 1925," and, therefore, the receipt therefore could not have been produced to the complainant on or before December 31st, 1924.
The defendants claim that two checks, each being in the sum of $1,957.50 (one-half of the amount due), were mailed to the complainant, and that only one of said checks was by it cashed; that funds were on deposit in the bank upon which the second check was drawn, and that it would have been paid upon presentation; that the complainant had always theretofore accepted checks in payment of amounts due.
The testimony concerning the mailing of said check or checks is: That of Samuel K. Ewen, the bookkeeper of Ralph Chester, who, upon a statement or bill of the amount due ($3,915), divided it by two, gave Mr. Sutton a blank check for $1,957.50, which he did, and gave to Ewen, who enclosed it in an envelope with the check made up by Ralph L. Chester for $1,957.50, addressed to Joseph M. Rowland, on January 15th, 1925.
Mr. Sutton says: "I firmly believe that I made out a check on one of their checks to Mr. Rowland for one-half the interest, nineteen hundred and some odd dollars, whatever it was." Further, "I have my firm belief about it. I wouldn't say I remember it; no, sir. I wouldn't swear I made out that check; no, sir."
Mr. Rowland, the president of the complainant, received by mail the statement mentioned by Ewen, personally opened the letter in which the statement was enclosed, and found one check of $1,957.50 (admittedly Corson's check). He testifies that no other payment for interest, c., then due was received. Mr. McCorkle, the bookkeeper for complainant, testified he received from Mr. Rowland the envelope containing the bill or statement, together with one check for $1,957.50.
No receipt was sent for the amount received, nor was the check deposited until February 25th, 1925.
This is explained by Mr. McCorkle, that Mr. Rowland told him to hold the check until the other half came in; that he (Rowland) left for Florida the day the check was received *Page 174 
and returned on or about the 25th of February, when he directed the check to be deposited.
The bill in this cause was filed March 5th, 1925, and the subpoenas issued March 26th, 1925, were served on the Suttons and Chesters on April 3d 1925.
Chester, hearing that the bill had been filed, on March 18th, 1925, caused his clerk to write to Rowland stating that checks had been mailed aggregating $3,915, asking for receipt and enclosing the receipted tax bill, which upon that date had been paid.
On March 27th, Mr. Carr, solicitor of Rowland, wrote Chester that this letter had been referred to him, and that no check of Mr. Sutton had been forwarded or received, and that he had been instructed to and had filed a bill to foreclose the mortgage.
Mr. Chester, on receipt of this communication, wrote under date of March 28th, 1925, a letter to Mr. Carr. This letter was read by Mr. Sutton, and, although he says he did not authorize it, "it was thoroughly understood he [Chester] was to write that letter, and the check therein was sent by his [Sutton's] permission."
In this letter Chester said: "The bookkeeper had divided the amount of the statement in half, made out check for my share, and thought he had also received the same amount from Mr. Sutton, this being the customary way on property jointly owned.
"But in this particular case we had received $4,000 from the tenant, which was sufficient to pay the interest and reduction on mortgage, and we should have paid Mr. Sutton's share as well as our own."
I am convinced that Mr. Ewen is mistaken in his statement that two checks were sent to Rowland, and find that only one check for $1,957.50, that of Mr. Chester's, was sent, and that the balance of $1,957.50 remained due and unpaid for more than thirty days.
Weiner v. Cullens, 97 N.J. Eq. 523, is dispositive of the defenses raised in this case. *Page 175 
In that case it was held —
First. A stipulation making principal due for default in payment of taxes and assessments (which cannot be regarded as differing essentially from a like stipulation touching the prompt payment of interest) held, not in nature of forfeiture, since mortgagors are required by foreclosure to pay only amount justly due, time for payment being shortened through their default.
Second. The payment of a part of the interest, and later offering the payment of the balance, can be neither a legal or equitable defense.
Third. It is competent for parties to mortgages to make time of payment of interest of the essence and to agree that default therein shall render principal immediately due and payable.
Fourth. Where, upon default in payment of taxes, foreclosure proceedings are brought, contention that proceedings were prompted by improper motives is immaterial.
The defendants cite DeGroot v. McCotter, 19 N.J. Eq. 531,
as holding "the court will not enforce a forfeiture of credit if the complainant is himself in fault, or has misled the defendant."
The court in that case, however, held: "That if the omission to pay interest within the time limited has happened by the negligence of the defendant, the forfeiture has been incurred and the contract will be enforced."
A decree in favor of the complainant will be advised. *Page 176